LOUISE E. B. GREENE & others *vs.* SPRINGFIELD SAFE
DEPOSIT AND TRUST COMPANY, Trustee.

Hampden.    May 14, 1936. — July 6, 1936.

Present: CROSBY, PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Probate Court*, Accounts.    *Trust*, Trustee's investments.

Assuming that accounts of a trustee might be reopened under G. L.
(Ter. Ed.) c. 206, § 19, after their allowance, to show that an invest-
ment stated therein was improper, they should not be reopened where
it appeared that, subsequent to the period covered by them, part of
the investment had been repaid to the trust in cash and the remainder
replaced by another, proper investment; the propriety of the original
investment had become immaterial.

A petition, filed in a probate court in 1935 by beneficiaries of a trust,
seeking revocation of decrees allowing two accounts of the trustee
because of false and misleading descriptions in the earlier account of
an investment amounting in law to a fraud upon the petitioners and
the court and warranting the revocation of the decree allowing that
account, properly was dismissed where it appeared that the same
investment was correctly and fairly stated in the later account, upon
which, after observance of all the requirements of § 24 of G. L. (Ter.
Ed.) c. 206, and without fraud, accident or mistake, a decree had
been entered that its items be finally determined and adjudicated
and that it be allowed.

PETITION, filed in the Probate Court for the county of
Hampden on January 14, 1935, for revocation of decrees
allowing certain accounts of the respondent as trustee under
the will of Arthur D. Ellis, late of Monson.

The petition was heard by *Denison*, J., who entered a
decree stating that he treated the "foregoing request for
revocations . . . as motions, involving no procedure in
equity, but as under probate jurisdiction only, and, after
notice and hearing, I deny the motions." The petitioners
and two other beneficiaries under the trust appealed.

Appended to the fourteenth account was the following:
"Request is hereby made that the items of this account be
finally determined and adjudicated." The decree therein,
entered on October 4, 1933, was "that the items of said

account be finally determined and adjudicated, and that said account be allowed."

*T. Allen,* (*V. M. Field* with him,) for the petitioner.

*H. E. Allen,* guardian *ad litem,* submitted a brief.

*H. Robinson & C. S. Lyon,* for the respondent, submitted a brief.

LUMMUS, J.   On December 5, 1917, the respondent trust company was appointed sole trustee of a trust fund of $600,000 under the will of Arthur D. Ellis, late of Monson. The terms of the trust do not appear, but it does appear that the petitioner Louise E. B. Greene is a daughter of the testator, that the other petitioners are her children, and that all are interested in the trust. The petitioners Arthur D. Baldwin and Fritz W. Baldwin reached majority respectively on April 16, 1931, and January 10, 1934. All the petitioners are residents of the State of Florida.

The petition, filed January 14, 1935, seeks the revocation of decrees allowing the accounts of the respondent trustee numbered eight to fourteen inclusive, and adjudicating the last two of them. The respondent trustee filed an answer and also what it called a "plea." The so called plea raised no issue of fact but was in substance a demurrer. It will be treated as such. There is no denial that the decree of the Probate Court, from which the petitioners and other persons similarly interested appealed, denying the petition, was in substance and effect a decree sustaining a demurrer and dismissing the petition because the demurrer was sustained. The rights of the parties are not affected by errors in nomenclature. *Universal Adjustment Corp.* v. *Midland Bank, Ltd. of London,* 281 Mass. 303, 328. *Tegelaar Brothers, Inc.* v. *Hanflig,* 286 Mass. 363.

On or about June 8, 1926, the respondent trustee lent $100,000 of the trust funds to a corporation called Kibbe Brothers Company, to be repaid on demand after five years, at five and one half per cent interest, and took as security a mortgage on the factory formerly owned by the Handy Chocolate Company, which Kibbe Brothers Company had bought. The petitioners allege that this investment was improper; that the factory was unoccupied and

unproductive; that the investment was made through the improper influence of one McElwain, a director, stockholder and treasurer of Kibbe Brothers Company and a director of the respondent; and that the loan was made for the purpose of enabling Kibbe Brothers Company to buy out the Handy Chocolate Company, a competitor, and to close down its factory, at a time when the financial condition of Kibbe Brothers Company was precarious.

The accounts numbered eight to twelve inclusive, covering the period from April 15, 1926, to April 15, 1931, showed an investment of principal of $100,000 in a real estate mortgage note of Kibbe Brothers Company. Each of these accounts was allowed soon after the close of the year covered by it, in most instances after notice to all known persons interested, the appointment of a guardian *ad litem* for minors and persons unborn or unascertained, and consent by him. The petitioners allege that the guardians *ad litem* made no substantial investigation.

In August, 1931, the mortgage was reduced to $90,000, by a payment of $10,000. In December, 1931, the respondent bought the mortgage from itself as trustee for $90,000, and issued participation certificates to that amount, $50,000 of which were taken for the trust. The rest were taken by another trust of which the respondent was trustee. But the thirteenth account, filed August 18, 1932, for the year ending April 15, 1932, showed that the mortgage of $100,000 had been paid down to $50,000. That was not the fact. It was not true that the trust held an exclusive mortgage upon the factory in the sum of $50,000. The fact was that the mortgage amounted to $90,000, and that the trust owned five ninths of it. The petitioners allege that when the respondent made the investment in the participation certificates, misleadingly described in the thirteenth account, Kibbe Brothers Company was insolvent, and the factory unoccupied and almost worthless. Upon this account a citation to all known persons interested was served, and a guardian *ad litem* for minors and persons unborn or unascertained consented to the decree allowing the account. The petitioners allege that he made no substantial investigation.

At some time $5,000 was paid on the participation certificates held by the trust under the will of Arthur D. Ellis, reducing the investment to $45,000.

The fourteenth account, filed August 28, 1933, for the year ending April 20, 1933, showed the investment as follows: "Certificate representing participation of $45,000 (formerly 50,000) in demand note of Kibbe Brothers for $85,000 secured by 1st mtge. on real estate Berkshire Ave., Springfield, Mass. 45,000." Upon this account, a citation issued and was served by publication and mailing to all known persons interested, citing them to appear and show cause why the account should not be allowed and the items thereof finally determined and adjudicated. A guardian *ad litem* was appointed for Arthur D. Baldwin, Fritz W. Baldwin and other persons alleged to be "legally incompetent to act in their own behalf" and for persons unborn and unascertained. The guardian *ad litem* consented "to the final adjudication and determination of each and every item on said account," but called the attention of the court to the change made in 1931 in the nature of the investment. A decree was entered on October 4, 1933, "that the items of said account be finally determined and adjudicated, and that said account be allowed."

The accounts preceding the thirteenth account were simply allowed. As to them there was no "matter in dispute . . . heard and determined by the court," for there is no suggestion that there was any contest upon them. *Coulson* v. *Seeley*, 277 Mass. 559, 562. They fall under G. L. (Ter. Ed.) c. 206, § 19, and upon the settlement of a later account "may be so far opened as to correct a mistake or error therein." In *Dickinson, appellant*, 152 Mass. 184, an account which had been allowed was reopened, and an investment made nearly six years before was disallowed. The consent of a guardian *ad litem* or of a party does not prevent the reopening of accounts under the statute. *Blake* v. *Pegram*, 101 Mass. 592, 598, 599; *S. C.* 109 Mass. 541, 551, *et seq. Bennett* v. *Pierce*, 188 Mass. 186. *Withington* v. *Fidelity & Casualty Co.* 237 Mass. 73. A petition for the revocation of the former decree and the reopening of the account has

been said to be unnecessary. *Barrett* v. *Briry*, 256 Mass. 45. See also *Brackett* v. *Fuller*, 279 Mass. 62, 71; *Bowles* v. *Comstock*, 286 Mass. 159; *Beardsley* v. *Hall*, 291 Mass. 411, 413.

Assuming that those earlier accounts might still be re-opened, for the purpose of showing that the original mort-gage of $100,000 was an improper investment, the petition-ers could not benefit thereby, for that original mortgage is no longer a part of the trust fund. The trust has received for it $55,000 in cash and participation certificates amount-ing to $45,000. If the investment in the participation certifi-cates has been conclusively adjudicated to be proper, the propriety of the original investment of $100,000 has become immaterial.

We may assume, for the sake of the argument at least, that the description of the investment in the thirteenth account, which was false and misleading, whether intention-ally so or not, was in law a fraud upon the *cestuis* and the court (*Jason* v. *Jason*, 289 Mass. 72, 79; *Howard* v. *Barn-stable County National Bank of Hyannis*, 291 Mass. 131, 135–136; *Welch* v. *Flory*, 294 Mass. 138, 143), and that such fraud warrants the revocation of the decree. Nevertheless, since the same investment appears in the fourteenth account, correctly and fairly stated, if that fourteenth account has been conclusively adjudicated so that it cannot be reopened, nothing could be done upon a reopening of the thirteenth account that would impair the effect of the decree adjudicat-ing the correctness of the fourteenth account.

The earlier law provided no more effective means of obtaining an adjudication of the correctness of any account of a trustee other than his final account, than was pro-vided by Pub. Sts. (1882) c. 144, § 9. That section was substantially the same as G. L. (Ter. Ed.) c. 206, § 19, without the reference to a more final settlement of accounts, which originated in St. 1907, c. 438. The provision for finality in the allowance of an account, contained in Pub. Sts. (1882) c. 144, § 14, applied only to final accounts. *Parker* v. *Boston Safe Deposit & Trust Co.* 186 Mass. 393. St. 1895, c. 288, § 1, was much like the present G. L. (Ter.

Ed.) c. 206, § 24, but contained the additional provision that "the decree upon said account shall have the same effect upon all items thereof as in the case of the allowance of matters in dispute under the provisions of" Pub. Sts. (1882) c. 144, § 9. That effect was, that the decree could not be reopened except by leave of court. *Bennett* v. *Pierce*, 188 Mass. 186, 188. *Rowell* v. *Milliken*, 266 Mass. 448, 452. But that additional provision, contained in St. 1895, c. 288, § 1, was dropped when that section became in substance R. L. (1902) c. 150, § 22, now G. L. (Ter. Ed.) c. 206, § 24.*

Then when St. 1907, c. 438, inserted in R. L. (1902) c. 150, § 17 (the successor of Pub. Sts. [1882] c. 144, § 9, and the predecessor of G. L. [Ter. Ed.] c. 206, § 19), words limiting the opening, upon the settlement of an account, of former settled accounts, to those "which have not been settled according to the provisions of" what is now G. L. (Ter. Ed.) c. 206, § 24, it became clear that the last mentioned section could no longer be construed to refer to final accounts only, but that the Legislature intended to provide a means for the final adjudication of any account. The decisive question in this case is, whether the fourteenth account was determined and adjudicated under § 24, so finally that it cannot be reopened.

We assume in favor of the petitioners, but without deciding, that upon petition or motion under probate practice even a decree which purports to be final and conclusive may be revoked for any cause which would enable a court of common law or equity to set aside a final judgment or decree by any known process of review. *Stetson* v. *Bass*,

---

\* Since this report is being published after the effective date of St. 1938, c. 154, it seems proper to note that, by that statute, § 19 of G. L. (Ter. Ed.) c. 206 was repealed and § 24 was amended to read as follows: "Upon application for the allowance of an account filed in the probate court, such notice as the court may order shall be given to all persons interested. If the interest of a person unborn, unascertained, or legally incompetent to act in his own behalf, is not represented except by the accountant, the court shall appoint a competent and disinterested person to represent his interest in the case. The person so appointed shall make oath to perform his duties faithfully and impartially, and shall be entitled to such reasonable compensation as the court shall allow. After final decree has been entered on any such account it shall not be impeached except for fraud or manifest error." — REPORTER.

9 Pick. 27, 30. *Waters* v. *Stickney,* 12 Allen, 1. *Crocker* v. *Crocker,* 198 Mass. 401. *Child* v. *Clark,* 231 Mass. 3. *Renwick* v. *Macomber,* 233 Mass. 530, 534. *Goss* v. *Donnell,* 263 Mass. 521. *Hilton* v. *Hopkins,* 275 Mass. 59. *Beardsley* v. *Hall,* 291 Mass. 411. See also *Cummings* v. *Cummings,* 128 Mass. 532; *Harris* v. *Starkey,* 176 Mass. 445; *Phillips* v. *Chase,* 203 Mass. 556; *Gallagher* v. *Sullivan,* 251 Mass. 552; *Fuller* v. *Fuller,* 261 Mass. 82; *Farquhar* v. *New England Trust Co.* 261 Mass. 209; *Holyoke National Bank* v. *Dulitzky,* 273 Mass. 125; *McLaughlin* v. *Feerick,* 276 Mass. 180; *Dolan* v. *Roy,* 286 Mass. 519. But we see no valid ground of attack upon the decree adjudicating the correctness of the fourteenth account. All the requirements of G. L. (Ter. Ed.) c. 206, § 24, were met. The nature of the investment in question was fully and fairly disclosed in the account. No fraud, accident or mistake is alleged with respect to the procurement or entry of the decree. The guardian *ad litem* reported the facts regarding the change of the investment, and took the responsibility of consenting to the decree. The Probate Court took the responsibility of entering the decree. There is no suggestion that the petitioners did not receive due notice of the hearing. It is not alleged that they intended to make any contest. *Sullivan* v. *Sullivan,* 266 Mass. 228. *Lovell* v. *Lovell,* 276 Mass. 10. *Frechette* v. *Thibodeau,* 294 Mass. 51. It was their duty, so far as they were of age, to study the account presented to the Probate Court by the trustee, and to make their objections at the hearing. The decree adjudicated in favor of the trustee the propriety of the investments shown in the account. *North Adams National Bank* v. *Curtiss,* 278 Mass. 471, 481. No ground is alleged upon which the decree can be set aside.

*Decree affirmed.*