HILDA S. BURLINGHAM & another[1] *vs.* JOHN N. WORCESTER, executor, & others.[2]

Norfolk.    May 4, 1966. — June 22, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ

*Probate Court,* Accounts. *Executor and Administrator,* Sale of property. *Trust,* Sale of property. *Fiduciary. Fraud.*

The mere sale by trustees of stock of their trust to a company in which they held some stock individually would not warrant a finding that the sale amounted to improper self-dealing by the trustees.    [202]

A petition by beneficiaries of a testamentary trust, brought many years after a decree of the Probate Court allowing the executors' account, to revoke that decree for alleged fraud on their part within G. L. c. 206, § 24, as amended by St. 1950, c. 413, in that the account showed the sale by the executors of one share of stock in a company but did not show that that share was sold to one of the executors in his individual capacity, was rightly dismissed in the circumstances where it appeared that more than one fifth of the stock of that company had been owned by the estate and became part of the trust property, that the executors became trustees under the will, that the sale was made in good faith for the purpose of qualifying the purchaser to become a director of the company so that he could represent the trust's interest in it, that the price was fair, that the sale was in fact beneficial to the trust, and that notice of presentation of the account for allowance was given to the petitioners.    [202–203]

———

[1] G. Kenneth Burlingham.

[2] Hazen H. Ayer, executor, Otis N. Shepard, Horace W. Shepard, Eliot B. Shepard, executors, Charles A. Collins and Richard D. Kirkpatrick, trustees, and A. Sinclair Burlingham, Margaret Newton and Susan Breithaupt.

PETITIONS filed in the Probate Court for the county of Norfolk on September 16, 1964.

The cases were heard by *Reynolds, J.*

*Lawrence H. Norris* for the petitioners.

*Philip R. White (James E. Kelley, Jr.,* with him) for the respondents.

KIRK, J.   These are appeals by the petitioners from decrees of the Probate Court dismissing their petitions to revoke decrees dated March 29, 1943, which allowed the executors' and trustees' accounts in connection with the estate of O. Atherton Shepard.   Upon request, the judge made a report of the material facts.   The evidence is reported under Rule 2 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 693, and ''represents what the parties were content to rely upon for the purposes of this appeal.''   *Everett* v. *Capitol Motor Transp. Co. Inc.* 330 Mass. 417, 420.   As such, the designated evidence ''is to be treated as a report of all the evidence.''   *Sulmonetti* v. *Hayes,* 347 Mass. 390, 391.   Since the petitioners offered no oral testimony and the judge's findings apparently rest wholly upon documentary evidence which is before us, there is no conflict of evidence, and therefore ''this court . . . draws its own inferences from the facts and determines the relief to be granted.''   *Bratt* v. *Cox,* 290 Mass. 553, 558.

We summarize the findings of the judge which are supported by the evidence.   The petitioners[3] are beneficiaries of a testamentary trust created by the will of O. Atherton Shepard, who died on May 17, 1938.   The will with codicil thereto was allowed on June 15, 1938.   On the same day, Thomas H. Shepard and Horace B. Shepard, Atherton's brothers, were appointed executors.   The testamentary trust res was composed of shares held by Atherton in several companies at the time of his death.   Part of the res consisted of 362 shares of stock in the Blanchard Machine Company (company).   On December 19, 1938, Thomas and

---

[3] That the petitioners are mother and son appears in *Burlingham* v. *Blanchard Mach. Co.* 347 Mass. 577, 578.

Horace, pursuant to Atherton's intention, were approved as trustees by the Probate Court. *Shepard* v. *Newton,* 304 Mass. 6.

On July 21, 1938, five weeks after their appointment as executors but before they officially became trustees, Thomas and Horace, as executors, sold to Horace in his individual capacity one of the shares of the company stock held by the estate. The purpose of the sale was to qualify Horace to become a director of the company whose by-laws did not exempt directors from being shareholders. The purpose of having Horace on the board of directors of the company was to secure representation of the testamentary trust which owned more than one fifth of the company's stock.

On June 12, 1941, Thomas and Horace, as trustees, sold twenty-five shares of the Blanchard stock held by the trust to the company. From a series of letters between Thomas and the petitioner Hilda Burlingham, it appears that Hilda was consistently interested in whatever happened to the Blanchard stock. There was no direct evidence that Thomas or Horace expressly informed her of the sale of the single share to Horace or the sale of the twenty-five shares to the company.

Thomas and Horace, on February 4, 1943, filed their first and second (and final) accounts as executors of Atherton's will. In the first account, the sale of one share of Blanchard stock is listed. The inventory value of the share was $550; it was sold for $450. There was some evidence, however, that, in 1938, it would have been difficult to obtain the inventory value for Blanchard stock. There was no evidence that the fair market value of a share in 1938 was more than $450. The name of the purchaser of the share was not listed, nor were the names of the purchasers of any other stock in the estate listed.

Also on February 4, 1943, Thomas and Horace, as trustees, filed their first account of the testamentary trust. The account showed that twenty-five shares of Blanchard stock were sold. Their listed inventory value was $16,250; they were sold, however, for $25,000. The purchaser of the stock (the company) was not mentioned in the account.

Citations issued on all the accounts and were duly served. Notice that the accounts had been presented for allowance was given to the petitioners and to the guardian ad litem appointed to protect the interest, among others, of the petitioner G. Kenneth Burlingham, then a minor. The accounts were allowed by the Probate Court on March 29, 1943.

Horace died on September 6, 1944; Thomas died on February 19, 1963. The petitions now before us were filed on September 16, 1964. The principal named respondents are the executors of the estates of Thomas and Horace. Also designated as respondents are their successors as trustees of the testamentary trust, and other beneficiaries of the trust.[4]

The petitioners contend that the decrees of March 29, 1943, allowing the accounts, should be revoked and the accounts reopened because of fraud by Thomas and Horace. G. L. c. 206, § 24, as amended by St. 1950, c. 413.[5] The fraud allegedly consists in the failure of Thomas and Horace to reveal to the petitioners that Horace and the company (in which Thomas had several shares of stock in his own name) were the purchasers, respectively, of the one share and the twenty-five shares of the Blanchard stock listed in the executors' and trustees' accounts. The respondents do not contest the fact that Horace and the company were the purchasers. On their face, the sales might appear to be examples of prohibited self-dealing by executors and trustees. *Morse* v. *Hill,* 136 Mass. 60, 65. We are persuaded, however, by the circumstances of the case, that Thomas and Horace did not defraud the petitioners, and that the judge was right in dismissing the petitions.

The only evidence relating to the sale of the twenty-five shares to the company was that it took place, that Thomas

---

[4] Earlier litigation by the petitioners with respect to their interest in the Blanchard Machine Company has been decided adversely to them. *Burlingham* v. *Blanchard Mach. Co.* 347 Mass. 577 (minority stockholders' suit). *Burlingham* v. *Ayer,* 350 Mass. 764 (bill in equity for an accounting).

[5] In relevant part, § 24 provides that ''After a final decree has been entered on any account . . . it shall not be impeached except for fraud or manifest error.''

owned some shares of Blanchard stock in his own right, and that Horace owned one share. The mere sale by trustees of stock to a company in which the trustees also held some shares individually is not, without more, a basis for finding that the sale amounted to self-dealing by the trustees. The question of fraud, therefore, is not presented by the evidence with respect to this sale. We accordingly turn to what the petitioners appear to rely on most strongly, the sale of the one share of Blanchard stock to Horace.

The evidence of the reasons for the sale of the one share to Horace comes from the respondents. This shows that the purpose of that sale was to benefit the trust through qualifying Horace as a director of the company. There is no evidence that Blanchard stock could have been sold, in 1938, for more than Horace paid for it. Thus there is no basis for a finding that Horace's purchase was "at the expense of the . . . trust" or that Thomas and Horace, as executors, placed themselves "in a position antagonistic to the beneficiaries of the trust." *Anderson* v. *Bean,* 272 Mass. 432, 448. Indeed, the sale to Horace indicates the contrary. We find, as did the judge, that the apparent self-dealing in the sale of the one share to Horace was in fact beneficial to the trust, that it was fair, and that it was made in good faith. See *Warren* v. *Pazolt,* 203 Mass. 328, 340–341.

Furthermore, the sale was neither omitted from nor misrepresented in the account. Compare *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 152 (dictum); *Jose* v. *Lyman,* 316 Mass. 271, 278. Notice of the filing of the account was given to the petitioners. Compare *Waitt* v. *Harvey,* 312 Mass. 384, 397; *Porotto* v. *Fiduciary Trust Co.* 321 Mass. 638, 642–643; *Bell* v. *Swift,* 322 Mass. 145, 146. It thereupon became the duty of the petitioners "to study the account presented to the Probate Court by the trustee[s], and to make their objections at the hearing." *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 154. In light of Hilda Burlingham's avid and persistent interest in whatever disposition was made of the

Blanchard stock, it is reasonable to conclude that such an examination was made and that the petitioners became aware of Horace's purchase long before these petitions were brought.

Viewing the evidence in its entirety, we think that Thomas and Horace acted "fairly, openly and in good faith," and that the respondents met the burden of proving that "no advantage . . . [was] taken of the parties beneficially interested, by misrepresentation or concealment of any important fact," that the petitioners were "in a position to understand the nature and effect" of the sale to Horace, and that the sale was "advantageous to the person[s] for whom . . . [they were] acting." *Ball* v. *Hopkins,* 268 Mass. 260, 266. It follows that the judge was correct in dismissing the petitions. The decrees are affirmed with costs of appeal in the discretion of the Probate Court.

*So ordered.*